```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW HAMPSHIRE
```

Oneta Bobbett

    v.                                  Civil No. 17-cv-265-JD
                                          Opinion No. 2018 DNH 069

City of Portsmouth, et al.


# O R D E R

Oneta Bobbett brings suit against the City of Portsmouth and two members of its police department, Kristyn Bernier and Michael Leclair, alleging federal and state law claims arising from a criminal investigation and prosecution against her. The defendants move for judgment on the pleadings on three of the state law claims, Counts II, IV, and V. Bobbett objects.

## Standard of Review

"The standard of review of a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is the same as that for a motion to dismiss under Rule 12(b)(6)." Frappier v. Countrywide Home Loans, Inc., 750 F.3d 91, 96 (1st Cir. 2014) (internal quotation marks omitted). Under that standard, the court will dismiss a claim "only if, taking all the complaint's well-pled allegations as true and viewing the other facts in the light most favorable to the plaintiff, the

complaint does not allege 'enough facts to state a claim to relief that is plausible on its face.'" Portugues-Santana v. Rekomdiv Int'l Inc., 725 F.3d 17, 25 (1st Cir. 2013) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "While [the plausibility] standard does not impose a 'probability requirement,' it does require 'more than a sheer possibility that a defendant has acted unlawfully.'" Germanowski v. Harris, 854 F.3d 68, 72 (1st Cir. 2017) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "Engaging in this plausibility inquiry is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. (quoting Iqbal, 556 U.S. at 679).

## Background[1]

In late 2013, Bobbett purchased a ring from Jathar Jewelers with her credit card. Following that purchase, Bobbett noticed

---

[1] The facts in this section are taken from Bobbett's complaint and several documents that the defendants have attached to their motion, including the search and arrest warrants against Bobbett and the indictments and criminal informations charging Bobbett with the offenses at issue in her complaint. The court may consider the documents attached to the defendants' motion because they are "fairly incorporated" into the complaint and susceptible to judicial notice. See Mercury Sys., Inc. v. S'holder Representative Servs., LLC, 820 F.3d 46, 51 (1st Cir. 2016) (discussing what courts may consider when reviewing motion for judgment on the pleadings).

two charges on her credit card statement for $1,850, the price of the ring. Although one of the purchases was the one that Bobbett had authorized from Jathar Jewelers, Bobbett had not authorized the other charge, which was from a merchant named the Face Café.

Bobbett disputed the Face Café charge with her credit card company, who advised her to report the charge to the police. Following that advice, Bobbett reported the Face Café charge as fraudulent to Officer Todd Goodwin of the Portsmouth Police Department.

At the time Bobbett made her complaint to Goodwin, she was in a contentious divorce proceeding with her husband, Jonathan Bobbett ("Jonathan"). Jonathan was a prominent local businessman, who had personal ties to the Portsmouth Police Department. Jonathan had socialized with members of the police department, taken members on trips to Hong Kong, Russia, and Las Vegas, and made charitable donations to the department.

Following Bobbett's report, Detective Kristyn Bernier of the Portsmouth Police Department began investigating Bobbett based on the theory that Bobbett had falsely reported the Face Café transaction as fraudulent. In connection with that investigation, Bernier executed an affidavit in support of an application for a search warrant to seize and search Bobbett's

cell phone.  On January 15, 2014, Bernier received the warrant, which authorized police to search Bobbett's phone "for subscriber and electronic communication documentation specific to this case."  The warrant also provided police the authority to access, view, and reproduce data from all items referred to in the search warrant "as necessary for the investigation and prosecution of this matter from October 20, 2013 through January 15, 2014."

The day after Bernier obtained the warrant, she met with Bobbett at the police station.  Bobbett believed that the purpose of the meeting was for Bernier to provide an update about the investigation concerning the Face Café transaction.  During the meeting, however, Bernier executed the search warrant and confiscated Bobbett's phone.

In April of 2014, Bernier sought, and received, an arrest warrant for Bobbett based on the crimes of providing a false report to law enforcement, making unsworn falsifications, and tampering with witnesses and informants.  In September of 2014, a Rockingham grand jury returned an indictment against Bobbett on the witness tampering count.  In addition, the Rockingham County Attorney filed informations charging Bobbett with providing a false report to law enforcement and making unsworn falsifications.

The criminal charges against Bobbett were ultimately nol-prossed on August 27, 2015. The records of the charges were annulled on March 7, 2016.

On October 6, 2014, a guardian ad litem report in the Bobbetts' divorce proceeding stated that Jonathan had expressed concerns that Bobbett was moving to Atlanta. Bobbett had never discussed anything with Jonathan about moving to Atlanta. The phone seized by Bernier, however, contained text messages between Bobbett and a man she used to date, in which that man urged her to move to Atlanta to be with him. Those text messages were from the summer of 2013, which was outside of the time limitation established in the search warrant.

Bobbett alleges that the police gave Jonathan this information, which they obtained through an illegal search of her phone. Bobbett further alleges that Bernier and the Portsmouth Police Department never actually suspected her of criminal wrongdoing, but rather started the criminal investigation as a means of obtaining information to aid Jonathan in the divorce.

Bobbett brings a claim against Bernier and Leclair under 42 U.S.C. § 1983 for violation of her constitutional rights (Count I). In addition, Bobbett brings a claim for malicious prosecution against Bernier and Portsmouth (Count II), and

claims for abuse of process (Count III), intrusion upon seclusion (Count IV), and public disclosure of private facts (Count V), against Bernier, Leclair, and Portsmouth.

## Discussion

Bernier and Portsmouth move for judgment on the pleadings on Bobbett's claims for malicious prosecution against them. Bernier, Leclair, and Portsmouth move for judgment on the pleadings on the claims against them for intrusion upon seclusion and public disclosure of private facts. Bobbett objects.[2]

I.  Malicious Prosecution (Count II)

To state a claim for malicious prosecution, Bobbett must allege that "(1) [s]he was subjected to a criminal prosecution or civil proceeding instituted by the defendant; (2) without probable cause; (3) with malice; and (4) the prior action terminated in [her] favor." Ojo v. Lorenzo, 164 N.H. 717, 727 (2013); see also Farrelly v. City of Concord, 168 N.H. 430, 445 (2015). In support of her malicious prosecution claim, Bobbett alleges that Bernier (1) did not have an honest suspicion that

---

[2] Although Bernier, Leclair, and Portsmouth moved jointly for judgment on the pleadings, see doc. no. 18, Portsmouth and Leclair filed a joint reply to Bobbett's objection, which Bernier did not join. Doc. no. 26. Rather, Bernier filed her own reply to Bobbett's objection. Doc. no. 25.

she engaged in criminal conduct and (2) maliciously initiated the criminal proceedings against her.  Portsmouth and Bernier move for judgment on the pleadings on the malicious prosecution claims, arguing that Bobbett's claims fail because the grand jury returned an indictment against her.  Portsmouth and Bernier also contend that Bobbett has failed to allege that the prosecution was malicious.

    A. <u>Probable Cause</u>

The defendants contend that they are entitled to judgment on the pleadings on the malicious prosecution claim because a grand jury in Rockingham County returned an indictment against Bobbett on the charge of tampering with witnesses and informants.  Because Bobbett has not alleged that Bernier engaged in impropriety in obtaining that indictment, the defendants argue that Bobbett has not plausibly pled that the prosecutions occurred without probable cause.

In response, Bobbett argues that the grand jury only indicted her on the tampering charge and not the charges for making a false report to law enforcement and making unsworn falsifications.  Bobbett further contends that because the grand jury did not return indictments for those two charges, her malicious prosecution claim can proceed.

7

"Probable cause in the malicious prosecution context has long been defined as 'such a state of facts in the mind of the prosecutor as would lead a man of ordinary caution and prudence to believe or entertain an honest and strong suspicion that the person arrested is guilty.'" Stock v. Byers, 120 N.H. 844, 846 (1980) (quoting MacRae v. Brant, 108 N.H. 177, 180 (1967)). "It depends not upon the accused's guilt or innocence of the crime charged but upon the prosecutor's honest and reasonable belief in such guilt at the time the prosecution is commenced." Id.

"Courts are nearly uniform in holding that the return of an indictment defeats a claim for malicious prosecution unless the plaintiff alleges that the defendant engaged in impropriety when procuring the indictment." Ojo, 164 N.H. at 727. An indictment "'definitively establishes probable cause' unless, at the pleading stage, the plaintiff asserts that 'the defendants wrongfully obtained the indictment by knowingly presenting false testimony to the grand jury.'" Id. (quoting Gonzalez Rucci v. United States I.N.S., 405 F.3d 45, 49 (1st Cir. 2005)).

### 1. Tampering Charge

The grand jury indicted Bobbett for the offense of tampering with witnesses or informants. Bobbett does not allege that Bernier or Portsmouth engaged in impropriety in obtaining the indictment. Therefore, the indictment definitively

8

establishes probable cause for the tampering charge, and Bobbett may not proceed on her malicious prosecution claim based on that offense. Accordingly, to the extent Bobbett's malicious prosecution claim is based on the prosecution of the tampering charge, that claim is dismissed.

### 2. False Statement Charges

Bobbett contends that her malicious prosecution claims may proceed because the grand jury did not return an indictment on the false statement charges. Generally, in the malicious prosecution context, "probable cause as to one charge will not bar a malicious prosecution claim based on a second, distinct charge as to which probable cause was lacking." See Mendonca v. City of Providence, 170 F. Supp. 3d 290, 302 (D.R.I. 2016) (citing cases) (concluding that plaintiff's conviction on a concurrently prosecuted charge did not defeat malicious prosecution claim on different charge); see also Soto v. City of N.Y., 132 F. Supp. 3d 424, 452 (E.D.N.Y. 2015) ("[W]here a grand jury indicts on some, but not all charges, the presumption [of probable cause] attaches only to those charges in the indictment.").

Bernier and Portsmouth provide no argument or authority supporting their assertion that the indictment, which only addressed the witness tampering charge, conclusively establishes

probable cause for all of the charges.  For that reason, their assertion is not sufficiently developed to permit review. [Coons v. Indus. Knife Co., 620 F.3d 38, 44 (1st Cir. 2010)](explaining that district courts are free to discard underdeveloped arguments); [United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990)](observing that issues discussed in a perfunctory manner without "developed argumentation" are waived).  Accordingly, for the purpose of defendants' motion for judgment on the pleadings, the court concludes that the indictment in this case does not definitively establish probable cause as to the false statement charges.[3]

Bobbett has adequately alleged that Portsmouth and Bernier did not possess probable cause to initiate the two false statement counts against her.

---

[3] Portsmouth and Bernier also argue that Bobbett cannot plead probable cause because (1) Bernier obtained an arrest warrant for the false statement charges and (2) the Rockingham County Attorney provided informations charging Bobbett with the false statement offenses.  Portsmouth and Bernier, however, provide no authority supporting the theory that an arrest warrant or an information conclusively demonstrate probable cause at this stage of the proceedings.  Therefore, the court concludes that, for the purposes of this motion for judgment on the pleadings, the informations and arrest warrant do not preclude Bobbett from proceeding on her malicious prosecution claims.

B. Malice

Portsmouth and Bernier also assert that the complaint fails to plead a claim for malicious prosecution because it contains only conclusory allegations of malice.  In response, Bobbett contends she has properly alleged malice.  In the context of a malicious prosecution claim, "[m]alice exists 'when the primary purpose in instituting the criminal proceeding was not to bring an offender to justice, but was, on the contrary, ill will, personal hostility, or to obtain a personal advantage.'"  Toney v. Perrine, No. CIV 06-CV-327-SM, 2007 WL 2688549, at *6 (D.N.H. Sept. 10, 2007) (quoting MacRae v. Brant, 108 N.H. 177, 181 (1967)); see also Aranson v. Schroeder, 140 N.H. 359, 364 (1995) (describing malicious process as requiring "an improper purpose in the use of legal process" (internal quotation marks omitted)).

Here, Bobbett alleges that "[t]he defendants procured the institution of criminal proceedings against [her] with malice." Doc. no. 1 at ¶ 33.  Standing alone, this allegation could be considered, as defendants contend, a conclusory recitation of the elements of malicious prosecution.  The complaint, however, goes on to allege a number of additional facts concerning malice.  Bobbett alleges that she did not falsely report the Face Café charge, and that Bernier did not honestly suspect that

11

she had.  The complaint also alleges that the defendants had an improper motive in conducting the investigation; namely, that they sought to help Jonathan in the divorce by giving him information from Bobbett's phone.  Finally, the complaint alleges that as a result of the investigation, Jonathan did indeed receive such information.  Those allegations are sufficient to allege that the defendants acted with malice in instituting the prosecution against Bobbett.

Accordingly, Bobbett has properly alleged a claim for malicious prosecution based on the false statement charges.

## II.  Intrusion upon Seclusion (Count IV)

Bobbett alleges that the defendants intruded on her seclusion by searching her phone beyond the limits authorized by the search warrant and by searching content that had nothing to do with the criminal investigation.  The defendants move for judgment on the pleadings, arguing that the alleged intrusion upon Bobbett's seclusion did not go beyond the accepted standards of decency.  In addition, the defendants contend that Bobbett has failed to allege that "the defendants should have realized" that the alleged conduct "would be offensive to persons of ordinary sensibilities."

Under New Hampshire law, "'a person who unreasonably and seriously interferes with another's interest in not having his

affairs known to others is liable to the other.'" Hamberger v. Eastman, 106 N.H. 107, 111 (1964) (quoting Restatement (First) of Torts § 867 (1939)). To recover under this tort, a plaintiff need not "prove any harm beyond the intrusion itself." Preferred Nat. Ins. Co. v. Docusource, Inc., 149 N.H. 759, 766-67 (2003) (citing Restatement (Second) of Torts § 652H comment a at 402 (1977)). An intrusion is tortious, however, only "if the defendant's conduct was such that he should have realized that it would be offensive to persons of ordinary sensibilities." Hamberger, 106 N.H. at 111 (internal quotation marks omitted). Liability attaches only "where the intrusion has gone beyond the limits of decency." Id. (internal quotation marks omitted).

Whether a particular intrusion is offensive is a question usually reserved for the factfinder. Remsburg v. Docusearch, Inc., 149 N.H. 148, 156 (2003). In making this determination, the factfinder should consider "the degree of intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded." Id. (internal quotation marks omitted).

Bobbett alleges that the defendants pursued baseless criminal charges against her to gain access to the information

on her cell phone, which included her private messages. Bobbett further alleges that the defendants did this for the purpose of providing information to Jonathan to use in the couple's divorce proceeding. Taking these allegations as true, as the court is required to do at this stage, the complaint plausibly alleges (1) conduct that goes beyond the limits of decency and (2) conduct that the defendants should have known would be offensive to persons of ordinary sensibilities. Accordingly, Bobbett has alleged a claim for intrusion upon seclusion.[4]

III. Public Disclosure of Private Facts (Count V)

Bobbett brings a claim for public disclosure of private facts against the defendants, alleging that they improperly publicized the contents of the personal information on her cell phone. Under New Hampshire law, "[o]ne who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate

---

[4] In her reply, Bernier argues that Bobbett has not alleged that she was the person who conducted the search at issue. Bobbett has alleged that Bernier obtained the search warrant and confiscated her cell phone. At this stage of the litigation, those allegations are enough for the court to infer that Bernier searched Bobbett's phone.

concern to the public." Lovejoy v. Linehan, 161 N.H. 483, 486 (2011) (quoting Restatement (Second) of Torts § 652D (1977)).

The defendants argue that Bobbett has not alleged that they publicized the relevant information. In addition, the defendants contend that Bobbett's claim fails because the information they disclosed is not highly offensive to a reasonable person. Bobbett objects, arguing that she has alleged a plausible claim for public disclosure of private facts.

A. Publicity

"[P]ublicity differs from mere publication," in that "[w]hile publication involves any communication by the defendant to a third person, publicity means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." Karch v. BayBank FSB, 147 N.H. 525, 535 (2002) (internal quotation marks omitted). Although publicity requires communication to the public at large, the New Hampshire Supreme Court has held that "determining whether a disclosure of a private matter has become one of public knowledge does not, as a matter of law, depend on the number of people told." Id. Rather, "[w]hether publicity is achieved by broadcasting something private to a few people or

to the masses is a conclusion best reached by the trier of fact." Id. For example, in Karch, the New Hampshire Supreme Court concluded that a complaint alleging that the defendant shared the private information of its employee to "other . . . employees and/or officers" stated a claim for public disclosure of private facts. Id.

Here, Bobbett alleges that members of the Portsmouth police department disclosed information from her phone to Jonathan for use in the couple's divorce proceedings. The complaint further alleges that this information was ultimately included in a guardian ad litem report that was used in the divorce proceedings. As a result, the information was, at the very least, spread to several people involved in the case, including the guardian ad litem and the court. These allegations are enough to plausibly allege that the defendants publicized Bobbett's private information.

B. Offensiveness

Bobbett alleges that it was highly offensive to have police search her phone for details of her personal life and then disclose that information to Jonathan. As discussed above, to plead a claim for public disclosure of private facts, the plaintiff must allege that the "matter publicized is of a kind that would be highly offensive to a reasonable person."

16

Lovejoy, 161 N.H. at 486 (quoting Restatement (Second) of Torts § 652D (1997)).

The defendants contend that this disclosure cannot be the basis for a viable public disclosure of private facts claim because the subject of that disclosure only concerned Bobbett's intention to move to Atlanta, something that is not highly offensive. In response, Bobbett asserts that she has alleged a situation, based on its context, that is highly offensive.

In this case, Bobbett alleges that the defendants disclosed the contents of her private and personal communications on her cell phone. It can be reasonably inferred that the disclosed statements were highly sensitive, given that they were between Bobbett and a person that she used to date and were disclosed while she was in the midst of a divorce proceeding. In addition, the defendants allegedly were aware of the divorce and acted on behalf of Jonathan, to assist him in the divorce proceedings. Given these allegations, Bobbett has plausibly alleged that the disclosure would be highly offensive to ordinary people.

## Conclusion

For the foregoing reasons, defendants' motion for judgment on the pleadings (doc. no. 18) is granted as to the malicious prosecution claims against Bernier and Portsmouth arising from

17

the prosecution of the witness tampering offense, part of Count II, and is denied as to the remainder of Count II, Count VI, and Count V.

SO ORDERED.

                                                                    _____
                                                                     Joseph A. DiClerico, Jr.
                                                                    United States District Judge

March 29, 2018

cc:   Charlie P. Bauer, Esq.
      Benjamin T. King, Esq.
      Daniel J. Mullen, Esq.